**25 CV 02859**

**JUDGE VARGAS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA, <u>EX REL.</u>
TRADESMAN PROGRAM MANAGERS,
LLC,

Plaintiff,

v.

LIAKAS LAW, P.C., DEAN N. LIAKAS,
STEPHEN J. LIAKAS, and NICHOLAS
LIAKAS,

Defendants.

Case No.:

**COMPLAINT FOR VIOLATION OF
FEDERAL FALSE CLAIMS ACT**

**FILED IN CAMERA &
UNDER SEAL**

**DO NOT PLACE ON PACER**

**Jury Trial Demanded**

Plaintiff-Relator, TRADESMAN PROGRAM MANAGERS, LLC, by and through the undersigned counsel, and in accordance with the Federal Rules of Civil Procedure and all other applicable rules, statutes, regulations, and governing legal authorities, hereby files the instant Complaint against Defendants LIAKAS LAW, P.C., ("Liakas Law"), DEAN N. LIAKAS, STEPHEN J. LIAKAS, and NICHOLAS LIAKAS based upon personal knowledge and relevant documents, for violations of the False Claims Act.

## NATURE OF THE CLAIMS

1.      This is an action to recover damages and civil penalties on behalf of the United States of America arising from false and/or fraudulent records, statements, and claims made and caused to be made by Defendants and/or their agents and employees, in violation of the federal False Claims Act, 31 U.S.C. § 3729, et seq. ("the FCA").

2.      This action seeks to recover millions of federal dollars wrongfully loaned to Defendants through the Federal Government's Payroll Protection Program ("PPP"). The PPP provided a needed capital boost for small businesses to survive through the pandemic, and a

pathway to borrowers for forgiveness of these loans – which Defendants took advantage of, to the detriment of Federal Government, and in turn, the taxpayers.

**THE PAYROLL PROTECTION PROGRAM**

3.    The Federal Government has spent billions of dollars in stimulus funding, as well as other federal funding, to support and aid legitimate small businesses through the coronavirus pandemic.

4.    Congress added sections 1102 and 1106 of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Section 1102 contains a new program called the Paycheck Protection Program ("PPP") and is party of the U.S. Small Business Administration's ("SBA") 7(a) Loan Program. These two sections are intended to provide economic relief to small businesses nationwide adversely impacted by the coronavirus pandemic and the COVID-19 Emergency Declaration issued by President Trump on March 13, 2020.

5.    Due to the COVID-19 emergency, many small businesses nationwide experienced economic hardship as a direct result of the Federal, State, and local public health measures that were being taken to minimize the public's exposure to the coronavirus. The SBA received funding and authority through the CARES Act to modify existing loan programs and establish the new PPP loan program to assist small businesses nationwide adversely impacted by the coronavirus pandemic.

6.    Section 1102 of the Act temporarily permits SBA to guarantee 100% of 7(a) loans under the PPP. Section 1106 of the CARES Act provides for forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP. The CARES Act was intended to provide relief to America's small businesses expeditiously.

7.    The CARES Act gives lenders delegated authority to process loan applications for PPP funding. SBA allowed lenders to rely on certifications of the borrowers in order to determine

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*2 | P a g e*

eligibility of the borrower and use of loan proceeds, and to rely on specified documents provided by the borrower to determine qualifying loan amount, and eligibility for loan forgiveness. Lenders are held harmless for borrowers' failures to comply with PPP rules.

8.      Borrowers were, in some circumstances, required to submit documentation to establish eligibility, such as payroll processor records, payroll tax filings, form 1099s, and/or income and expenses documentation. In general, Borrowers calculated an amount to borrow by aggregating payroll costs from the previous 12 months for employees whose principal place of residence is the United States. Annual employee salaries were capped at $100,000. The borrower then calculated the average monthly payroll cost and multiplied that amount by a factor of 2.5.

9.      A required certification on the application states, "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." Defendants were required to, and did in fact, make this certification as part of their PPP application.

10.     Defendants also "further certif[ied] that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

11.     Finally, Defendants certified that they "understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

12.     The very first guidance issued by the Small Business Administration ("SBA") and the Treasury Department on March 31, 2020, provided that loan applicants will need to certify in

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*3 | P a g e*

good faith that "Current economic uncertainty makes the loan necessary to support your ongoing operations," and that "The funds will be used to retain workers and maintain payroll..."

13.    On April 2, 2020, the SBA issued an Interim Final Rule, which provided that "SBA will allow lenders to rely on certifications of the borrower in order to determine eligibility of the borrower." This process, with minimal, if any, diligence obligations on the lenders, helped expedite much-needed funds to small businesses in dire need.

14.    It also set the stage for rampant fraud.

15.    Notable here, on April 23, 2020, further guidance was set forth that "Although the CARES Act suspends the ordinary requirement that borrowers must be unable to obtain credit elsewhere (as defined in section 3(h) of the Small Business Act), borrowers still must certify in good faith that their PPP loan request is necessary.  Specifically, before submitting a PPP application, all borrowers should review carefully the required certification that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.'  Borrowers must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business.  For example, it is unlikely that a public company with substantial market value and access to capital markets will be able to make the required certification in good faith, and such a company should be prepared to demonstrate to SBA, upon request, the basis for its certification... Any borrower that applied for a PPP loan prior to the issuance of this guidance and repaid the loan in full by May 4, 2020 will be deemed by SBA to have made the required certification in good faith."

16.    On May 13, 2020, the deadline to take advantage of the safe harbor provision was again extended to May 18, 2020.

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
4 | P a g e

17.     This action alleges that Liakas Law had no need for the PPP funds as falsely certified, and the loan request was knowingly not necessary to support its ongoing operations.

## THE FALSE CLAIMS ACT

18.     The FCA was enacted during the Civil War, and was substantially amended in 1986, and again in 2009 and 2010. Congress amended the FCA in 1986 to enhance the Federal Government's ability to recover losses sustained as a result of fraud against the United States after finding that fraud in federal programs was pervasive and that the FCA, which Congress characterized as a primary tools for combating government fraud, was in need of modernization. The amendments create incentives for individuals to come forward with information about fraud against the Federal Government without fear of reprisals or inaction, and enable the use of private legal resources to prosecute fraud claims on the Federal Government's behalf.

19.     The FCA prohibits, *inter alia*, (1) knowingly presenting, or causing to be presented, a false or fraudulent claim for payment or approval; and (2) knowingly making or using, or causing to be made or used, a false or fraudulent record or statement material to a false or fraudulent claim. 31 U.S.C. §§ 3729(a)(1)(A), (B). Any person who violates the FCA is liable for a civil penalty of up to $11,000 for each such claim, plus three times the amount of the damages sustained by the Government. 31 U.S.C. § 3729(a)(1)(A) (as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 [28 U.S.C. § 2461 note; Public Law 104-410]).

20.     In 2009, Congress amended the FCA to clarify that a "claim" includes "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property that (i) is presented to an officer, employee, or agent of the United States; or (ii) is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest..." 31 U.S.C. § 3729(b)(2).

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
5 | P a g e

21.    The FCA allows any person having information about an FCA violation to bring an action for himself and the Federal Government, and to share in any recovery. The FCA requires that the complaint be filed under seal for a minimum of 60 days (without service on Defendants during that time) to allow the Federal Government time to conduct its own investigation and to determine whether to join the suit.

22.    Based on the foregoing laws, *qui tam* Plaintiff/Relator seeks through this action to recover all available damages, civil penalties, and other relief for the violations alleged herein in every jurisdiction to which Defendants' misconduct has extended.

## PARTIES

23.    Plaintiff/Relator TRADESMAN PROGRAM MANAGERS, LLC ("Relator") is a limited liability company, duly formed, existing, and operating under the laws of the State of New York, wherein Relator has its principal place of business.

24.    Relator brings this action on behalf of the United States of America, the true party of interest.

25.    Liakas Law is a professional corporation, duly formed, existing, and operating under the laws of the State of New York.

26.    Upon information and belief, Defendant DEAN N. LIAKAS ("Dean") resides in and is a citizen of the State of New York. He is also the managing partner of Liakas Firm. At all times relevant, Dean Liakas was licensed or otherwise authorized to practice law in the State of New York.

27.    Upon information and belief, Defendant STEPHEN J. LIAKAS ("Stephen") resides in and is a citizen of the State of New York. He is also the founding partner of Liakas Firm. At all times relevant, Stephen Liakas was licensed or otherwise authorized to practice law

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
6 | P a g e

in the State of New York.

28.     Upon information and belief, Defendant NICHOLAS LIAKAS ("Nicholas") resides in and is a citizen of the State of New York. He is also a senior partner of Liakas Firm. At all times relevant, Nicholas Liakas was licensed or otherwise authorized to practice law in the State of New York.

29.     Upon information and belief, Dean, Stephen, and Nicholas are the principals of Liakas Law (hereinafter, collectively referred to as "Liakas Firm"), with an office at 40 Wall Street, 50th Floor, New York, New York 10005.

30.     Liakas Firm operates as a personal injury law firm, whereby Liakas Firm pursues recovery on claims for clients for a fee contingent upon recovery (the "contingency fee"). The contingency fee, at all times relevant herein, is governed by the terms of a retainer agreement between Liakas Firm and the client. Liakas Firm utilizes a form retainer agreement, a sample of which, from various dates between 2018 and 2022, is attached hereto as **Exhibit "1,"** which provides for a 1/3rd contingency fee, of either the gross recovery if the litigation costs are advanced by Liakas Firm (such costs then being reimbursed to Liakas Firm from the remaining recovered amount), or a 1/3rd contingency fee of the net recovery if the costs remain the responsibility of the client.

## JURISDICTION AND VENUE

31.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 31 U.S.C. § 3732, the latter of which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730. Although this issue is no longer jurisdictional after the 2009 amendments to the FCA, to Realtor's knowledge there has been no

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
7 | P a g e

statutorily relevant public disclosure of the "allegations or transactions" in this Complaint, as those concepts are applied in 31 U.S.C. § 3730(e), as amended by Pub. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-02.)

32.     Moreover, whether or not such a disclosure has occurred, Relator would qualify as an "original source" of the information on which the allegations or transactions in this Complaint are based. Plaintiff researched and discovered through private investigation the pertinent dates of formation and other related entity information of Defendant, investigated their financial conditions in around the time the false statements were made and presented, and has materially added to any such disclosure through such investigation.

33.     This Court has personal jurisdiction over Defendants pursuant to 31 U.S.C. § 3732(a) because that section authorizes nationwide service of process and because Defendants are New York entities.

34.     Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)-(c) and 31 U.S.C. § 3732(a) because Defendant can be found in and/or transacted business in this district, and because violations of 31 U.S.C. §§3729 *et seq.* alleged herein occurred within this district. At all times relevant to this Complaint, Defendant regularly conducted substantial business within this district.

## FACTUAL ALLEGATIONS

35.     On or about June 21, 2019, Liakas Firm secured a $2 million dollar settlement, and obtained a corresponding contingency fee.



36.   On or about July 16, 2019, Liakas Firm secured a $1.9 million dollar settlement, and obtained a corresponding contingency fee.



37.   On or about August 8, 2019, Liakas Firm secured a $2 million dollar settlement, and obtained a corresponding contingency fee.



38.   On or about September 26, 2019, Liakas Firm secured a $3 million dollar settlement, and obtained a corresponding contingency fee, in the matter of <u>Colon v. Advanced Auto Parts, *et al*</u>.

39.   On or about September 30, 2019, Liakas Firm secured a $1.05 million dollar

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
9 | P a g e

settlement, and obtained a corresponding contingency fee.



40.    On or about January 15, 2020, Liakas Firm secured a $3.5 million dollar

settlement, and obtained a corresponding contingency fee.



41.    On or about February 5, 2020, Liakas Firm secured a $1.2 million dollar

settlement, and obtained a corresponding contingency fee.



*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*10 | P a g e*

42.     On or about March 14, 2020, Liakas Firm secured a $1.5 million dollar verdict, and obtained a corresponding contingency fee.



43.     On or about March 20, 2020, Liakas Firm secured a $1.2 million dollar settlement, and obtained a corresponding contingency fee.



44.     On or about March 23, 2020, Liakas Firm secured an $850,000 settlement, and obtained a corresponding contingency fee.



rica *ex rel* Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.
*Complaint*
11 | P a g e

45.     On or about March 25, 2020, Liakas Firm secured a $750,000 settlement, and obtained a corresponding contingency fee.



46.     In or around April of 2020, Liakas Firm submitted an application for PPP funds, which was approved on or about May 1, 2020, in the amount of $528,907. The application reported 38 jobs, and a **total amount of $535,041 was forgiven on or about July 2, 2021.**

## LIAKAS LAW, P.C.
🛈 Why is my loan information here?

| Loan Amount | Amount Forgiven | Location | Industry | Date Approved |
|---|---|---|---|---|
| **$528,907** | **$535,041** Includes any accrued interest | New York, NY Urban | Offices of Lawyers | May 1, 2020 (First Round) |

| Where applicants said the money will go | | Lender | Jobs Reported | Business Type |
|---|---|---|---|---|
| Payroll | $439,450 | JPMorgan Chase Bank, National Association | 38 | Subchapter S Corporation |
| Utilities | $8,202 | | | |
| Mortgage Interest | $0 | | | |
| Health Care | $0 | | | |
| Rent | $81,255 | Business Age | Loan Status | |
| Refinance EIDL | $0 | Existing or more than 2 years old | Forgiven | |
| Debt Interest | $0 | | | |

47.     **In the ten (10) months leading up to the PPP loan, Liakas Firm obtained <u>over $18.95 million in settlements and awards on a contingency fee basis;</u> based on these cases alone, without regard to the remainder of their docket and any other ongoing business activities.**

*United States of America <u>ex rel</u> Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*12 | P a g e*

48.    Regardless, Liakas Firm made a knowingly false certification on their first PPP application that "Current economic uncertainty makes the loan necessary to support [their] ongoing operations." As part of making this certification, applicants were instructed that they "must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business."

49.    In making this certification, Liakas Firm not only disregarded their current business activity, but disregarded the availability of credit through a relative's vast network of case funding and direct law firm funding entities.

50.    On or about April 13, 2020, Liakas Firm secured a $700,000 settlement, and obtained a corresponding contingency fee.



51.    On or about April 15, 2020, Liakas Firm secured a $650,000 settlement, and obtained a corresponding contingency fee.



*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*13 | P a g e*

52.    On or about April 21, 2020, Liakas Firm secured a $600,000 settlement, and obtained a corresponding contingency fee.



53.    On or about April 29, 2020, Liakas Firm secured a $600,000 settlement, and obtained a corresponding contingency fee.



54.    **Regardless, Liakas Firm did not take advantage of the provided safe harbor to return the funds by May 4, 2020 provided for those who failed to make the certification above in good faith.**

55.    **Liakas Firm did not take advantage of the extension of the provided safe harbor to return the funds by May 14, 2020.**

56.    **Liakas Firm further did not take advantage of the extension of the provided safe harbor to return the funds by May 18, 2020.**

57.    On or about July 29, 2020, Liakas Firm secured a $1.5 million dollar settlement, and obtained a corresponding contingency fee.

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*14 | P a g e*



58.    In September of 2020 - four months after certifying in purported good faith that $528,907 in PPP funds were "necessary to support" the Liakas Firm's "ongoing operations," and four months prior to certifying in purported good faith that an additional $559,666 in PPP funds were "necessary to support" the Liakas Firm's "ongoing operations" - Dean Liakas purchased a $1.95 million dollar house.

59.    In December of 2020 - seven months after certifying in purported good faith that $528,907 in PPP funds were "necessary to support" the Liakas Firm's "ongoing operations," and just one month prior to certifying in purported good faith that an additional $559,666 in PPP funds were "necessary to support" the Liakas Firm's "ongoing operations" - Nicholas Liakas purchased a $990,000 house.

60.    In or around January of 2021, Liakas Firm took out a *second draw* PPP loan in the amount of $559,666. Once again, **a total amount of $564,419 was forgiven, this time on or about December 6, 2021.**

61.    **Together with the first draw PPP funds, Liakas Firm took $1,099,460 out of the program intended to assist struggling small businesses.**

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*15 | P a g e*



62.    **Between the time of their application for their first draw PPP loan and the approval of the second draw PPP loan, Liakas Firm obtained an additional $4,050,000 in settlements on a contingency fee basis; based on these cases alone, without regard to the remainder of their docket and ongoing business activities.**

63.    Regardless, once again, Liakas Firm certified, knowingly and falsely, that "Current economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant."

64.    Once again, Liakas Firm certified, knowingly and falsely, that "the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects."

65.    Liakas Firm had the loans forgiven in July and December of 2021 – **after collecting contingency fees on an additional $23,125,000 in settlements, below** - essentially passing along the cost of their payroll to taxpayers where there was no legitimate need, while their own funds were used for excess profit.

66.    On or about February 11, 2021, Liakas Firm secured a $1.375 million dollar settlement, and obtained a corresponding contingency fee.

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*16 | P a g e*



67.    On or about April 28, 2021, three (3) months after certifying PPP funds were necessary to maintain operations for the Firm, the Liakas Firm and/or its principals had sufficient funds to form and capitalize Jumpstart Funding LLC, a litigation finance company which, upon information and belief, the source of such belief being statements provided by a Liakas Firm employee, actively underwrites and provides cash advances to personal injury plaintiffs with pending lawsuits at exorbitant interest rates. The registered address of such business is "Suite C" of an office *duplex* owned at the time by a relative of the principals, with one unit on the right containing a dental practice formerly operated by such relative, and a second unit on the left containing the Liakas Law Satellite New Jersey office. Suite C is not observable. There are only two observable mailboxes.



*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
17 | P a g e

68.     Two other addresses are on file for Jumpstart Funding LLC, both Liakas family personal residences. Despite such advances requiring a UCC filing to be filed with the relevant Department/Secretary of State, and despite being actively engaged in provided such advances, Jumpstart LLC has, upon due diligence, never filed a single such UCC statement.

69.     On or about May 13, 2021, Liakas Firm secured a $850,000 settlement, and obtained a corresponding contingency fee.



70.     On or about May 14, 2021, Liakas Firm secured a $1 million dollar settlement, and obtained a corresponding contingency fee.



71.     On or about May 20, 2021, Liakas Firm secured a $750,000 settlement, and obtained a corresponding contingency fee.

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*18 | P a g e*



72.    On or about May 21, 2021, Liakas Firm secured a $850,000 settlement, and

obtained a corresponding contingency fee.



73.    On or about August 6, 2021, Liakas Firm secured a $2.175 million dollar recovery,

and obtained a corresponding contingency fee.



*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*19 | P a g e*

74.     On or about August 12, 2021, Liakas Firm secured a $3 million dollar recovery, and obtained a corresponding contingency fee.



75.     On or about August 19, 2021, Liakas Firm secured a $3.9 million dollar recovery, and obtained a corresponding contingency fee.



76.     On or about August 26, 2021, Liakas Firm secured a $600,000 recovery, and obtained a corresponding contingency fee.



*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*20 | P a g e*

77.     On or about August 27, 2021, Liakas Firm secured a $1.25 million dollar recovery, and obtained a corresponding contingency fee.




78.     On or about August 31, 2021, Liakas Firm secured a $975,000 recovery, and obtained a corresponding contingency fee.




79.     On or about October 18, 2021, Liakas Firm secured a $2.35 million dollar settlement, and obtained a corresponding contingency fee.




*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*21 | P a g e*

80.    On or about November 24, 2021, Liakas Firm secured a $1 million dollar settlement, and obtained a corresponding contingency fee.




81.    On or about December 6, 2021, Liakas Firm secured a $3.05 million dollar recoveryt, and obtained a corresponding contingency fee.




82.    In August of 2022, just as the global COVID-19 pandemic began to come to an end, **Liakas Firm announced the expansion of their newly acquired two-floor headquarters located at 40 Wall Street, in New York, New York**.

83.    As the Treasury has set forth, the purpose of the Payroll Protection Program was to allow small businesses to "maintain their payroll, hire back employees who may have been laid off, and cover applicable overhead" – *not* to subsidize $2m in real estate purchases by principals, fund an office expansion, or pad the already exorbitant profit margin of a law firm pulling in millions, if not tens of millions, in net profits a year, with no legitimate good faith basis to certify need of assistance.

84.    Liakas Firm thus made material misrepresentations on their applications for PPP funds, knowing lenders and the Federal Government would rely on said representations in providing the PPP funds to Liakas Firm.

85.    These funds ultimately were provided at the expense of the Federal Government, and in turn, at the expense of the taxpayers.

### Individual Defendants Liable

86.    As the capital already existed to cover the Firm's costs, which it could readily bear without assistance *multiple times over*, the individual Defendants in effect diverted these funds to their own purposes and into their own pockets. As the Liakas Firm's corporate entity was utilized to perpetuate a fraud, the corporate veil warrants piercing. Corporate limitations on liability cannot be utilized to insulate and shield its principals from fraud of their own making, to their own benefit, and through abuse of the corporate form.

### CAUSE OF ACTION
### False Claims Act
### 31 U.S.C. §§ 3729(a)(1)(A)-(B)

87.    Relator realleges and incorporates by reference the allegations as contained in the foregoing paragraphs as though fully set forth herein.

88.    This is a claim for treble damages and penalties under the False Claims Act, 31 U.S.C. § 3729, *et seq.*, as amended.

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
23 | P a g e

89.    By virtue of the acts described above, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government, or authorized agent of the United States Government, for payment or approval.

90.    By virtue of the acts described above, Defendants knowingly made or used, or caused to be made or used, false or fraudulent records or statements material to false or fraudulent claims for payment by the Government.

91.    Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented to third party lending institutions, at minimum, four (4) times (first and second draw applications and related forgiveness applications). Relator does not have access to the records of all such relevant occurrences of false or fraudulent statements or claims.

92.    Lenders, acting on behalf of the Federal Government, were guaranteed 100% of the PPP loans. Said lenders were unaware of the falsity of the records, statements, and claims made or caused to be made by Defendants. Said lenders paid the claims that would not be paid but for Defendants' illegal conduct.

93.    By way of the knowing and intentional false certifications presented to the Federal Government, Liakas Firm wrongfully obtained $1,099,460 of taxpayer money, and including forgiven interest, has damaged the Federal Government in an amount not less than $3,298,380 of treble actual damages.

### PRAYER FOR RELIEF

WHEREFORE, *qui tam* Plaintiff/Relator prays for judgment against Defendant as follows:

A.   That this Court enter judgment against each Defendant in an amount equal to three times the damages the United Sates has sustained because of Defendant's actions, specifically not less than $3,298,380; plus, a civil penalty of not less than $13,946 and not more than

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
24 | P a g e

$27,894 for each violation of 31 U.S.C. § 3729;

B.  That each of Dean, Stephen, and Nicholas be held personally, jointly, and severally liable in the amounts of **$3,298,380**, in addition to a civil penalty of not less than $13,946 and not more than $27,894 for each violation of 31 U.S.C. § 3729, and that such debt is non-dischargeable in bankruptcy pursuant to 11 U.S.C. §§523(a)(2) (A) & (B);

C.  That Relator be awarded the maximum amount allowed pursuant to 31 U.S.C. § 3730(d);

D.  That Relator be awarded all costs of this action, including attorney's fees and expenses; and,

E.  That Relator recover such other relief as the Court deems just and proper.

<u>**DEMAND FOR JURY TRIAL**</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Dated:  New York, New York
April 1, 2025

Respectfully submitted,

THE WILLIS LAW GROUP

By: _____
Daniel A. Johnston, Esq.
Justine Barbieri, Esq.
Attorneys for Plaintiff/Relator
1985 Forest Lane
Garland, TX 75042
(214) 736-9433

*United States of America ex rel Tradesman Program Managers, LLC v. Liakas Law, P.C., et al.*
*Complaint*
*25 | P a g e*