UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
UNITED STATES OF AMERICA, *EX REL.*
TRADESMAN PROGRAM MANAGERS,
LLC,

                                 Plaintiff,

    - against –

LIAKAS LAW, P.C., DEAN N. LIAKAS,
STEPHEN J. LIAKAS, and NICHOLAS
LIAKAS,

                                Defendants.
-------------------------------------------------------------------------x

**Case #: 1:25-cv-02859-JAV**

**Declaration of**
**Daniel A. Johnston, Esq.**

Daniel A. Johnston, Esq., pursuant to 28 U.S.C. § 1746, declares that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a supervising partner at The Willis Law Group, PLLC, counsel of record for Plaintiff-Relator Tradesman Program Managers, LLC in the above-captioned action. I submit this declaration in support of Plaintiff-Relator's Memorandum of Law in Opposition to Defendants' Motion for Sanctions. I have personal knowledge of the facts set forth herein.

2.      On February 24, 2026, I received a Rule 11 safe harbor letter from counsel for Defendants, with a draft of the sanctions motion and a zip folder of purported "Exhibits to Walsh Declaration.zip" ("exhibits zip folder") (collectively, the "Rule 11 Notice Package"). A true and accurate copy of this correspondence, together with a file folder depicting the contents of the exhibits zip folder, is attached hereto as **Exhibit 1.** A true and accurate copy of the Memorandum in Support of the Rule 11 motion ("Notice Mem. Supp.") provided on February 24, 2026 is attached as **Exhibit 2.**

3.      The contents of Exhibits 1 & 2 are <u>not the same</u> as what Defendants have now filed on March 27, 2026.

1

4.　　The now filed Dean Liakas declarations, Docs. 42 and 42-1, were entirely omitted in the Rule 11 Notice Package. Exhibit 1.

5.　　The Declaration of Brianna Walsh, Doc. 41 ("Walsh Dec."), was omitted from the Rule 11 Notice Package. Exhibit 1.

6.　　The contents of the exhibits zip folder contained purported Exhibits A – O; the Walsh Dec. actually filed contains Exhibits marked A – R. Exhibit 1; Walsh Dec.

7.　　Exhibits "D" and "E" to the Walsh Dec. actually filed (Doc. 41), relating to RAJson Investigations LLC ("RAJson"), were omitted in the exhibits zip folder on February 24, 2026. Exhibit 1; Doc. 41.

8.　　The Memorandum in Support of the Rule 11 Motion as filed, Doc. 40 ("Mem. Supp."), is not the same as the Notice Mem. Supp. The Mem. Supp. adds additional material allegations including allegations as to RAJson on p. 7; the references to the Exhibits in conjunction with the Walsh Dec. have been changed to account for additional Exhibits; the filed Mem. Supp. removes any reference to *Graham Cnty. Soil & Water v. U.S. ex rel. Wilson*, 559 U.S. 280 (2010).

9.　　Each reference in the Notice Mem. Supp. references a "Liakas Aff." The filed Mem. Supp. references a Liakas Declaration (Doc. 42), and a Liakas Declaration Exhibit A (Dec. 42-1). Neither Declaration was provided in the Rule 11 Notice Package.

10.　　The Liakas Declaration directly accuses the undersigned's firm of leaking a sealed complaint. Doc. 42, ¶ 5. It makes an allegation as to the ownership of RAJson. Doc. 42, ¶ 6. Exhibit A to the Liakas Declaration (Doc. 42-1) makes a variety of allegations found nowhere in the Rule 11 Notice Package.

11.　　As to the allegation of leaking a sealed document, that accusation is categorically false. I did not provide the Complaint to the iFraud Foundation prior to unsealing. I did not have

2

any involvement in or input into production of the podcast. The declaration of Damien Caldwell, submitted separately in connection with this opposition, establishes the full chain of events from the CM/ECF notification through the podcast's publication on January 15, 2026.

12. As to the insinuations made for the first time about a familial relationship to the owner of RAJson, this entity has no involvement in this case whatsoever. Neither the undersigned nor Willis Law Group has any ownership interest or financial interest in RAJson beyond a commercially standard, form retainer agreement.

13. I responded to the Rule 11 Notice Package, detailing various misrepresentations, misstatements, and deficiencies within the Notice Mem. Supp. and Rule 11 Notice Package, on February 25, 2026. A copy of this correspondence is attached here as **Exhibit 3.**

14. On March 12, 2026, we received a Supplemental Notice which attached a recent decision in a matter unrelated to Defendants or this allegations in this case. The Supplemental Notice contained no other documents or identified any of the other changes identified *supra*, ¶¶ 4-11. Doc. 37.

15. I responded to this communication, also on March 12, 2026, and directly attached the operative Complaints relevant to Defendants in response to repeated mischaracterization of them as "copy-paste" so that the Court could review for itself. Docs. 38, 38-1, 38-2, 38-3, 38-4.

16. I authored the post contained in the Mem. Supp., p. 3. As visible in the full-size image, the mock book cover's subtitle reads: "Dismissal Without Prejudice on Standing with Leave to Amend." The red box beneath the subtitle reads: "By an Astroturfed Workers Rights Org Followed Exclusively by Lawyers."

17. The post was a reply to a post by the "Workers Rights Alliance," an unregistered organization with which I have no affiliation and with which The Willis Law Group, PLLC has no

3

affiliation, and which is, upon information and belief, an astroturfed organization followed exclusively by lawyers (*i.e.*, an agenda-driven public relations instrument masquerading as an organic association with concealed interests), as discussed further in the concurrent Memorandum in Opposition.

18.    The Workers Rights Alliance post celebrated a court's dismissal of a complaint in an unrelated action, against unrelated defendants, with the message "The game is over. The insurance company's con against workers has ended!"

19.    My reply corrected that characterization by reference to the specific and limited nature of the ruling: a dismissal without prejudice on standing, with leave to amend – *i.e.,* the reply was calling out a mischaracterization of what the decision did, and the resulting posture of the case. The characterization of this post as "He touted that any disposition in favor of defendants would be a 'pyrrhic victory,'" is neither supported by the context or content of the very post itself. That is plainly not what was conveyed by any objective interpretation, and under penalties of perjury, was not my subjective intent to convey.

20.    The characterization that this reply is a concession that "Relator and Willis Law have no genuine interest in litigating the merits to judgment," is irreconcilable with the fact that in that very matter, the amended complaint was in fact filed, was subsequently dismissed and appealed, and that appeal is currently pending before the United States Court of Appeals for the Second Circuit.

21.    I am also the author of the September 5, 2025 letter submitted to the Honorable Jesse M. Furman in *USA ex. rel. Tradesman Program Managers, LLC v. Elefterakis, Elefterakis & Panek, P.C.,* et al., No. 25-cv-02853-JMF (S.D.N.Y.), requesting that the docket in that matter be

4

placed back under seal following an inadvertent unsealing caused by a law office administrative error.

22.    Despite quoting a half-sentence from this correspondence and repeatedly referencing it throughout, Defendants never offer a copy for the Court's independent assessment. Doc. 40, pp. 6, 14.

23.    A true and correct copy of the relevant correspondence in that matter, including the Government's response, is attached hereto as **Exhibit 4**.

24.    As reflected in Exhibit 4, the Government's response to my re-seal request was a neutral administrative inquiry, a phone call, and followed by a statement that it took no position. The court declined the re-seal request. The Elefterakis *qui tam* was subsequently voluntarily dismissed.

25.    In my September 5, 2025 letter to Judge Furman requesting to reseal, I noted the intent to dismiss the matter during seal, the administrative error resulting in the docket becoming unsealed, and my concern that the sequence of events "will be misconstrued and presented as intentional conduct in the course of unrelated litigations." This was a good faith effort to restore seal to a docket that should not have been unsealed, the opposite of what the Mem. Supp. alleges. The prediction within the September 5, 2025 letter as to the fact the benign occurrence would be spun nefariously appears to have been well-placed.

Dated: March 31, 2026
     Melville, New York

               *Daniel A. Johnston*
               Daniel A. Johnston, Esq.