

*Via E-mail:*
*james.catterson@pillsburylaw.com*                    February 25, 2026
**James M. Catterson**
**Pillsbury Winthrop Shaw Pittman LLP**
**31 West 52nd Street**
**New York, New York 10019**

Re:     **February 24, 2026 Rule 11 Correspondence**

Mr. Catterson:

We have reviewed your February 24, 2026 letter and the draft Rule 11 motion.

We respectfully disagree that the Complaint, the documents already before the Court, and the pending motion sequences reflect any lack of concrete evidence or good-faith basis for the suit. To the contrary, the record contains indisputable documentary support for the core allegations.

Your continued reliance on *Graham County Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280 (2010) is misplaced. That decision itself expressly acknowledged - six days after the 2010 amendments were signed into law - that it was applying the *prior* version of the False Claims Act ("FCA")'s public-disclosure bar, which the amendments had rendered inapplicable to future cases involving, as here, post-2010 amendment conduct. *Id.*, at 283 n.1. Under the current statute, state records do not trigger the bar. *See* 31 U.S.C. § 3730(e)(4)(A) (post-2010) (limiting triggering disclosures to specific \*federal\* sources or the news media).

This point is not reasonably disputable. Respectfully, given the pedigree of your firm and yourself, the only inference to be drawn from making *Graham* and progeny a centerpiece of your pending motion, and now presenting it as a basis for a Rule 11 motion, is that you are deliberately trying to mislead the Court and the undersigned. We are not so misled. Neither shall the Court be so misled – we are sure you are aware that the Hon. Jeannette Vargas was, prior to her 2024 appointment, Assistant United States Attorney and Deputy Chief of the Civil Division for the Southern District of New York, wherein she had direct and deep experience with the FCA as applied pursuant to the post-2010 amendments. And before that, for good measure, a clerk for now-Supreme Court Justice Sotomayor, and a graduate of Yale Law School and Harvard. Your current strategy involves gambling that Judge Vargas, despite all of the above, will adopt your attempt to conflate dead letter law to apply to the revised statute and the FCA's current jurisprudence. This is not wise.

Turning to such non-public disclosures for purposes of the FCA - including State and Local records pursuant to the 2010 amendments which explicitly limited such triggering records to *Federal* records – the Complaint alleged existence of alternative credit and additional availability

**PENNSYLVANIA | NEW YORK | NEW JERSEY | DELAWARE**
**WEST VIRGINIA | FLORIDA | TEXAS**

**The Willis Law Group, PLLC** | 1985 Forest Lane, Garland, Texas 75042
(214) 736.9433 – Main | (214) 736.9994 - Facsimile
TheWillisLawGroup.com | E-Service Address: service@thewillislawgroup.com

of further credit. The UCC evidencing the existence of that credit line since 2018, with the credit available based upon case inventory, is now before the court. Notable about that subject case inventory– *it exclusively went up since 2018 with no marked decline throughout the relevant time period*. This graph is based on data pulled from NYSCEF – *also* State records and explicitly not a public disclosure.



We have also marked the timing of the $1.95m home purchase in September 2020, and the $990k home purchase in December 2020 – *one month before certifying **again** that economic uncertainty warranted taking another ~$500,000 from taxpayers*. These purchases are supported by deeds – local records again explicitly carved out of "public disclosure" pursuant to the 2010 amendments.

These records are plainly not barred by the public disclosure bar and further plainly evidence a reasonable inquiry before filing of suit. Merely repeating "unsubstantiated allegations" over and over again does not make it so when it required one to ignore literal documentary evidence. The fact that the Complaint is quite likely to survive the Rule 12(b)(6) challenge in its current form, with extremely low odds of dismissal with prejudice based on the erroneous case law and challenges Defendants have presented, make the instant Rule 11 letter and draft motion appear a) performative, b) entirely frivolous, and c) as an attempt to bully a whistleblower.

Regardless, the threat is taken seriously – and should you proceed in such a frivolous manner, doubling down on knowing, easily demonstrable half-truths and erroneous citations in what is, in effect, a second shot at your motion to dismiss with somehow even more needless mudslinging – now misquoting the undersigned's social media, dragging in a dozen other entities and their PPP data which are not subject to this matter, - you will in fact have needlessly multiplied

the proceedings in bad faith, the precise trigger for 28 U.S.C. § 1927 sanctions. These will be filed if we need to respond formally to what amounts to motion by smear.

Respectfully, where the argument added is comprised of attempts to:

- mischaracterize and shrink an image so you can misrepresent what it says and its purpose, regarding a matter not involving your client, which *expressly evidenced an intent to litigate that matter,* contrary to the point it was offered for;



.

- cite to precedent which itself acknowledged within the decision - which you yourself do not acknowledge - that it represented dead-letter law – for a *second* time, as well as a case *affirmed on other grounds,* consciously and expressly, which you merely cite as *affirmed* (*FDIC ex rel. Moncho v. Fifth Third Bank, N.A.*, 2023 U.S. App. LEXIS 28722, *2 (2d Cir. 2023);

*Graham*, within its own decision, six (6) days after the Amendments, acknowledged the Court was deciding the matter upon what was now dead-letter law, but which was not retroactive. *Graham*, at 283, n.1 ("On March 23, 2010, the President signed into law the Patient Protection and Affordable Care Act, Pub. L. 111-148, 124 Stat. 119. Section 10104(j)(2) of this legislation replaces the prior version of 31 U.S.C. § 3730(e)(4) with new language. The legislation makes no mention of retroactivity, which would be necessary for its application to pending cases given that it eliminates petitioners' claimed defense to a *qui tam* suit. Throughout this opinion, we use the present tense in discussing the statute as it existed at the time this case was argued").

Doc. 27, p. 14.

The disclosure bar provision now, post-2010, states:

31 USC § 3730(e)(4)(A): The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed-

(i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

(ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

(iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

Similarly, the Eastern District has stated "In March of 2010, Congress amended the public disclosure bar so that information disclosed to a state government no longer falls under the public disclosure bar." *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island*, 2017 U.S. Dist. LEXIS 50696, *35 (EDNY March 31, 2017).

Doc. 27, p. 16. *See United States ex rel. Quartararo v. Catholic Health Sys. of Long Island,* 2017 U.S. Dist. LEXIS 50696, *35 (EDNY March 31, 2017); *United States ex rel. JDJ & Assoc. LLP v. Natixis*, 2017 U.S. Dist. LEXIS 164106, at *5 (SDNY Sept. 29, 2017); *Burstein v. Long*, 2018 U.S. Dist. LEXIS 197838, *19, n. 8 (SDNY 2018).

- for a *second* time, cherry-pick half a sentence from an email so as to falsely manufacture an intent plainly not present upon reading in full, which evidences the undersigned went out of his way *in good faith*, after voluntarily dismissing that matter when the government declined to intervene, to re-seal as the unsealing was unintentional;

> We further respectfully request the Court place this docket and the filings thereunder under seal. Relator had intended to dismiss the matter pursuant to the Court's last Order and within the timeframe to remain under seal. However, due to law office error, the voluntary dismissal was not properly and timely filed. Due to the inadvertent unsealing followed by immediate request for dismissal, there are serious concerns that the optics of this sequence of events will be misconstrued and presented as intentional conduct in the course of unrelated litigations. These concerns are entirely disposed of should the docket be placed back under seal, where it would have remained but for law office error. We have conferred with this Government on this issue, and the Government takes no position on the request (Exhibit A, p. 2).

Doc. 27, p. 23; EDNY Case #: 25-cv-02853-JMF, Doc. 5.

- screenshot a social media post from an entirely unrelated company to this proceeding (GNY) and misattribute it to Relator – *again*;

- make allegations regarding external RICO lawsuits irrelevant to the claims before the Court, including that two have been dismissed, which were not on the merits, and none of the suits filed against your clients have been dismissed;

- Attach exhibits from an organization to which neither the undersigned, nor the undersigned's firm, nor the Relator control or operate (proposed Exs. A-C);

- Attach exhibits from other parties wholly unrelated to the instant action in any capacity whatsoever (proposed Exs. G, H, I, J, K, L, N, M, N), apparently for the purpose of establishing entities other than the Defendants took PPP loans, *without addressing the actual allegations in this action*,

- it is on its face a bad faith argument. We continue to remain focused *solely on prosecution of the allegations in this matter, within its four walls*. This matter is before a very observant judge, who is going to notice that every claimed instance of purported bad faith is supported solely by half-quotes, adjectives, and editorializing, followed immediately by relentless character attack. The idea that a general managing agent for an insurance company has arbitrarily selected your clients to have their "reputations tarnished" is on its face ridiculous when the Governor herself called your clients part of "an organized network of scammers" who "allegedly filed over 70 bogus lawsuits," just two weeks ago.[1] Indeed, the Second Circuit has reviewed such arguments and found them wanting where, as here, allegations are "sufficiently strong to justify further inquiry to determine whether [Defendant] does or does not deserve an unblemished reputation." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 87 (2d Cir. 2017).

---

[1] https://www.governor.ny.gov/news/video-audio-photos-rush-transcript-governor-hochul-highlights-proposals-bring-down-costs-auto;
https://www.newsday.com/long-island/staged-accidents-long-island-rico-lawsuit-czbhhz9r

Despite the ready availability of external evidence which could be used for character attacks, Relator is explicitly *not* doing that, and instead remains focused exclusively on the specific allegations presently before the Court. It is Defendants who are transparently trying to make this case about any and everything *except* the allegations and evidence before the Court. Should you move forward with this ill-advised plan, the Court will see what is plainly on display. I would much prefer to discuss an amicable resolution for the taxpayers, as already offered in opposition to the pending motion. Or, frankly, any topic that actually has to do with *this* case.

We look forward to your response. You are welcome to give me a call at your convenience if you wish to discuss.

Best Regards,

*Daniel A. Johnston*

Daniel A. Johnston, Esq.