UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA EX REL. TRADESMAN PROGRAM MANAGERS, LLC,<br><br>Plaintiff,<br><br>-v-<br><br>LIAKAS LAW, P.C., et al.,<br><br>Defendants. | 25-CV-02859 (JAV)<br><br>OPINION AND ORDER |

JEANNETTE A. VARGAS, United States District Judge:

Relator Tradesman Program Managers ("Tradesman") brings this *qui tam* suit on behalf of the United States of America against Defendants Liakas Law, P.C. ("Liakas Law" or the "Corporate Defendant") and Dean N. Liakas, Stephen J. Liakas, and Nicholas Liakas (the "Individual Defendants") alleging violations of the False Claims Act, 31 U.S.C. § 3729 ("FCA"). ECF No. 6 ("Complaint" or "Compl.") at 1. Presently before the Court is Defendants' motion to dismiss, Defendants' motion for judicial notice of certain exhibits, Relator's motion for judicial notice of other exhibits, and Defendants' motion for Rule 11 sanctions against Relator's counsel. ECF No. 18 ("Motion to Dismiss"); ECF No. 20 ("Defendants' Motion for Judicial Notice"), ECF No. 23 ("Relator's Motion for Judicial Notice"); ECF No. 39 ("Motion for Sanctions"). For the reasons that follow, the Motion to Dismiss is **GRANTED**, both parties' motions for judicial notice are **DENIED** as moot, and Defendants' Motion for Sanctions is **DENIED**.

## BACKGROUND

### A. Factual Background

The following facts are accepted as true and construed in the light most favorable to the non-moving party at the pleadings stage. *Xeriant, Inc. v. Auctus Fund LLC*, 141 F.4th 405, 411 (2d Cir. 2025).

During the COVID-19 pandemic, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Compl., ¶ 4. The CARES Act enacted the Paycheck Protection Program ("PPP") as part of the Small Business Administration's ("SBA") 7(a) loan program. *Id.* The PPP aimed to provide loans to small businesses that experienced financial hardship because of the pandemic and related public health measures. *Id.*, ¶¶ 4-5. The CARES Act permitted the SBA to guarantee 100 percent of PPP loans and to forgive up to the full principal amount of qualifying guaranteed loans. *Id.*, ¶ 6.

Lenders who processed PPP loan applications could rely on borrower certifications to determine eligibility. *Id.*, ¶ 7. As part of the application process, borrowers were required to certify that "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant." *Id.*, ¶ 9. SBA released guidance on April 23, 2020, clarifying that borrowers "must make this certification in good faith, taking into account their current business activity and their ability to access other sources of liquidity sufficient to support their ongoing operations in a manner that is not significantly detrimental to the business." *Id.*, ¶ 15. Borrowers who applied and received a PPP loan prior to this guidance were

deemed to have made the required certification in good faith if they repaid in full by May 4, 2020. *Id.* This deadline was later extended to May 18, 2020. *Id.*, ¶ 16.

In or around April 2020, Defendant Liakas Law submitted an application for a PPP loan, which was approved on or about May 1, 2020, in the amount of $528,907. *Id.*, ¶ 46. This loan was forgiven on or about July 2, 2021, for a total amount of $535,041, which included accrued interest. *Id.*

In or around January 2021, Liakas Law took out a second PPP loan for $559,666. *Id.*, ¶ 60. This loan was forgiven on or about December 6, 2021, for a total amount of $564,419, including accrued interest. *Id.* Relator provides a screenshot of a ProPublica[1] webpage as its source of information about Liakas Law's PPP loans. *See id.*, ¶¶ 46, 61.

Before, during, and after the PPP application process, Liakas Law reported securing significant settlements for its personal injury clients, for which it typically receives a contingency fee of about one-third.[2] *Id.*, Ex. 1. From June 2019 through March 2020, Liakas Law secured over $18.95 million in settlements and awards. *Id.*, ¶ 47. From April 2020 through July 2020, it secured $4.05 million in

---

[1] Defendants request, and Relator does not oppose, judicial notice of corresponding ProPublica links to Relator's screenshots in the Complaint. *Compare* ECF No. 22 ("Walsh Decl."), ¶¶ 9-10 & Exs. E-F, *with* ECF No. 26 at 3 ("Relator does not object to the Court taking judicial notice of Defendants' submitted documents denominated Exhibits E and F." (emphasis removed)).

[2] "Liakas Firm['s] . . . form retainer agreement . . . provides for a [one-third] contingency fee, of either the gross recovery if the litigation costs are advanced by Liakas Firm (such costs then being reimbursed to Liakas Firm from the remaining recovered amount), or a [one-third] contingency fee of the net recovery if the costs remain the responsibility of the client." Compl., ¶ 30.

settlements. *Id.*, ¶¶ 50-53, 57, 62. From February 2021 through December 2021, it secured $23.125 million in settlements. *Id.*, ¶¶ 65, 66, 69-81. Relator cites Liakas Law's Instagram as the source of these settlement amounts. *See id.*, ¶¶ 35-45, 50-53, 57, 66-81.

Several of the Individual Defendants—the principals of Liakas Law, *id.*, ¶ 26-29—made significant purchases during the same period. Dean Liakas purchased a house for $1.95 million in September 2020, and Nicholas Liakas purchased a house for $990,000 in December 2020. *Id.*, ¶¶ 58, 59, 66, 69-81.

Liakas Law and/or its principals also formed and capitalized a new litigation finance company, Jumpstart Funding LLC, on or about April 28, 2021, *id.*, ¶ 67 (Relator supplies this detail "upon information and belief, the source of such belief being statements provided by a Liakas Firm employee"), and Liakas Law expanded its headquarters office (40 Wall Street, New York, NY) on or about August 2022. *Id.*, ¶ 82 (Relator cites Liakas Law's own announcement as the source of this information).

**B. Procedural History**

Relator filed this action under seal on behalf of the United States pursuant to the *qui tam* provisions of the FCA. ECF No. 6. The Complaint alleges that Defendants falsely certified that PPP loans were necessary to support ongoing operations at Liakas Law despite ample resources and access to other sources of credit. *Id.*, ¶¶ 1-2, 48, 87-93. In January 2025, the federal government declined to intervene. *See* ECF Nos 4, 7.

On February 12, 2026, Defendants filed the Motion to Dismiss. ECF No. 18. Defendants argue, *inter alia*, that Relator fails to plead fraud with particularity as required by Rule 9(b), ECF No. 19 at 10-13, that the FCA's public disclosure bar forecloses this action, *id.,* at 13-17, that the Complaint fails to state a claim, *id.,* at 18-23, and that the corporate veil cannot be pierced, *id.,* at 23-25.[3] Relator filed its Opposition on February 22, 2026, ECF No. 27 ("Opp'n Mem."), and Defendants filed a Reply on March 2, 2026, ECF No. 29.

Both Relator and Defendants have filed motions for judicial notice. ECF Nos. 20, 23. Defendants have also filed a Motion for Sanctions against Relator's counsel. ECF No. 39.

## LEGAL STANDARDS

### A. Rule 12(b)(6)

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court accepts as true all well-pleaded allegations and draws all reasonable inferences in favor of the non-moving party. *Romanova v. Amilus Inc*, 138 F.4th 104, 108 (2d Cir. 2025).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Kaplan v. Lebanese Canadian Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted)).

[3] As Relator abandons its argument to pierce the corporate veil in recognition of the fact that Liakas Law is a pass-through S corporation, *see* Opp'n Mem. at 20, the Court does not address Defendants' argument to dismiss on this basis.

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . [the standard] requires more than labels[,] conclusions, and a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The Court's charge in ruling on a Rule 12(b)(6) motion 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Jennings v. Hunt Companies*, Inc., 367 F. Supp. 3d 66, 69 (S.D.N.Y. 2019) (quoting *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 176 (2d Cir. 2004)).

**B. Rule 9(b)**

"*Qui tam* complaints filed under the FCA, because they are claims of fraud, are subject to [Federal] Rule [of Civil Procedure] 9(b)." *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 81 (2d Cir. 2017) (citing *United States ex rel. Ladas v. Exelis, Inc.*, 824 F.3d 16, 26 (2d Cir. 2016)). Rule 9(b) provides that when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Chorches*, 865 F.3d at 82. To that end, a *qui tam* complaint alleging fraud must: "(1) specify the statements that the [Relator] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Shields* v. *Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) (citation omitted). The purpose of detailed pleadings under Rule 9(b) is "threefold—it is designed to provide a defendant with fair notice

of a plaintiff's claim, to safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit." *Ladas*, 824 F.3d at 25-26 (quoting *O'Brien* v. *Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)).

"Despite the generally rigid requirement that fraud be pleaded with particularity, allegations may be based on information and belief when facts are peculiarly within the opposing party's knowledge." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990). "This exception to the general rule must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Id.* "Where pleading is permitted on information and belief in a complaint that alleges fraud (and is therefore subject to Rule 9(b)), [the Second Circuit] require[s] that the complaint adduce specific facts supporting a strong inference of fraud." *Chorches*, 865 F.3d at 82.

**C. Sanctions**

"Due process requires that courts provide notice and opportunity to be heard before imposing *any* kind of sanctions." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 334 (2d Cir. 1999) (cleaned up). A higher standard of notice must also be satisfied to impose sanctions under Federal Rule of Civil Procedure 11 pursuant to that rule's safe harbor provision, Rule 11(c)(2). Rule 11(c)(2) provides "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Additionally, "[t]he motion must be served under Rule 5, but it must not be filed or

be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.*

The Second Circuit has held that "[t]he safe-harbor provision is a strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (citations omitted). Ultimately, "[t]he purpose of the provision is . . . to give the opponent notice and an opportunity to consider withdrawing the filing without the court's involvement." *Id.* at 177.

Under 28 U.S.C. § 1927, "a court may impose sanctions on any attorney who 'so multiplies the proceedings in any case unreasonably and vexatiously.'" *Schlaifer Nance*, 194 F.3d at 336 (quoting 28 U.S.C. § 1927). Imposing sanctions under Section 1927 also requires "a clear showing of bad faith on the part of an attorney." *Id.* (citation omitted).

Similarly, to impose sanctions pursuant to the Court's inherent power, two findings must be made: "(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay." *Id.* (citation omitted). In both contexts, "bad faith may be inferred only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *Id.* (cleaned up). Additionally, "[a] finding of bad faith, and a finding that conduct is without color or for an improper purpose, must be supported by a high degree of

specificity in the factual findings." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 114 (2d Cir. 2009) (citation omitted).

**DISCUSSION**

The FCA imposes civil liability on "any person who . . . knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim," *id.,* § 3729(a)(1)(B). Relator brings claims against Defendants under both provisions, arguing that Defendants' first and second draw applications and related forgiveness applications necessitated violations of both. Compl., ¶¶ 89-90.

"To establish a claim under either subsection, a relator must show that the defendant: (1) made a claim, (2) to the United States government, (3) that is false or fraudulent, (4) knowing of its falsity, and (5) seeking payment from the federal treasury." *United States ex rel. Chiles v. Cooke Inc.*, 185 F.4th 12, 18 (2d Cir. 2026) (cleaned up); *see also United States v. AmeriSourceBergen Corp.*, No. 25-2950, 2026 WL 2539817, at *4 (2d Cir. Aug. 28, 2026) (observing that these subjections are "often considered together due to their overlapping elements").

Both of these subsections of the FCA require the existence of "false or fraudulent" claims. The FCA defines a "claim" as "any request or demand . . . for money or property" that is presented, directly or indirectly, to the United States. 31 U.S.C. § 3729(b)(2)(A). "A claim is legally false when it falsely certifies—expressly or impliedly—compliance with a governing statutory, regulatory, or

contractual provision." *United States ex rel. Quartararo v. Catholic Health Sys. of Long Island Inc.*, 84 F.4th 126, 130 (2d Cir. 2023).

In addition, "[t]o find FCA liability, it is not enough for the defendants to have presented a materially false claim; they must have done so 'knowingly,' . . . meaning with 'actual knowledge of the information,' 'in deliberate ignorance of the truth or falsity of the information,' or 'in reckless disregard of the truth or falsity of the information[.]'" *United States v. Strock*, 982 F.3d 51, 65-66 (2d Cir. 2020) (quoting 31 U.S.C. § 3729(a)(1), (b)(1)(A)). "In other words, the government must allege that the defendants 'knowingly violated a requirement that the defendant[s] know[] is material to the Government's payment decision.'" *Id.* (quoting *Escobar*, 579 U.S. at 181).

**A. Individual Defendants**

Contrary to Relator's contention, Opp'n Mem. at 11, group pleading is not permitted solely because a corporate defendant is a pass-through entity or individual defendants control an entity defendant. *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) (where "derelictions are pleaded against the defendants generally, with little or no specification as to individual roles," a complaint cannot survive scrutiny under Rule 9(b) (recognizing an exception only as to insider trading defendants)); *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 331 F. Supp. 2d 247, 253 (S.D.N.Y. 2004) (dismissing fraud claim where limited liability company and its managing member were lumped together); *Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr.*, LLC, 525 F.

Supp. 3d 482, 516-17 (S.D.N.Y. 2021) (dismissing fraud claim against individuals and entities controlled by those individuals).

The Complaint contains no allegations of fraudulent conduct specific to any of the Individual Defendants. The only allegations implicating each of the three Liakas Defendants are those that hold them collectively responsible for Liakas Law's two PPP loan certifications and their corresponding forgiveness applications. Relator asserts the following:

> Relator cannot at this time identify all of the false claims for payment that were caused by Defendants' conduct. The false claims were presented to third[-]party lending institutions, at minimum, four . . . times (first and second draw applications and related forgiveness applications). Relator does not have access to the records of all such relevant occurrences of false or fraudulent statements or claims.

*See* Compl., ¶ 91. Allegations of this nature are plainly insufficient to survive dismissal under Rule 9(b). "Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *accord Related Cos., L.P. v. Ruthling*, No. 17-CV-04175, 2017 WL 6507759, at *10 (S.D.N.Y. Dec. 18, 2017). "Because Rule 9(b) requires that a defendant receive fair notice of the fraud claim, 'a plaintiff alleging a claim sounding in fraud against multiple defendants under Rule 9(b) must plead with particularity by setting forth *separately* the acts complained of by *each defendant*.'" *United States v. New York Soc. for the Relief of the Ruptured & Crippled, Maintaining the Hosp. for Special Surgery*, No. 07-CV-00292 (PKC), 2014 WL 3905742, at *19 (S.D.N.Y. Aug. 7, 2014) (quoting *Ningbo*

*Prods. Import & Export Co. v. Eliau*, No. 11-CV-00650 (PKC), 2011 WL 5142756, at *7 (S.D.N.Y. Oct. 31, 2011)); *accord DiVittorio v. Equidyne Extractive Indus., Inc.,* 822 F.2d 1242, 1247 (2d Cir. 1987) (Where "multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). The Complaint against the Individual Defendants fails on these grounds.

**B. Falsity**

Relator claims that "Liakas Firm [twice] certified, knowingly and falsely, that '[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the Applicant.'" Compl., ¶¶ 48, 63. Further, Relator contends that "[by] hav[ing] the loans forgiven in July and December of 2021 . . .[, the Liakas Firm] essentially pass[ed] along the cost of their payroll to taxpayers where there was no legitimate need, while their own funds were used for excess profit." *Id.*, ¶ 65. In support of these allegations, Relator points to the Corporate Defendant's settlements, two of its principals' home purchases, the creation of a litigation finance company by "the Liakas Firm and/or its principals," and an office expansion in 2022, *id.*, ¶¶ 35-45, 47, 50-53, 57-59, 65-67, 82-83, concluding that "Liakas Firm not only disregarded their current business activity, but [also] disregarded the availability of credit through a relative's vast network of case funding and direct law firm funding entities" when applying for PPP loans and forgiveness, *id.*, ¶ 49.

As an initial matter, events that took place months or even years after Liakas Law applied for the PPP loans have no bearing on whether its certifications were

false when made. *See Bloomfield v. Engineered Structures, Inc.*, No. 22-CV-789 (DJN), 2025 WL 2413900, at *9 (E.D. Va. Aug. 19, 2025) (excluding evidence at trial of defendant's financial condition following its PPP certification, as "[n]either party suggests that the PPP imposed any kind of ongoing certification requirement concerning economic necessity, or that PPP loan recipients were statutorily required to continue experiencing economic uncertainty once they had received their PPP loan"). That Liakas Law created a litigation finance company in April 2021 or expanded its headquarters in August 2022 thus cannot be considered as evidence of falsity of certifications made in April 2020 and January 2021. *United States ex rel. Relator LLC v. O'Rourke*, No. 24-CV-00901 (EK) (MMH), 2026 WL 799601, at *4 (E.D.N.Y. Mar. 23, 2026) ("[T]he fact that the Association did well *after* receiving the PPP loan says nothing about its economic state *before* receiving it.").

The remaining allegations are insufficient to render the claim of falsity plausible rather than simply possible. Plaintiff alleges that Liakas Law had substantial receivables in the months before it obtained PPP loans. Yet allegations of income alone do not establish a lack of economic necessity. The Amended Complaint is devoid of any details regarding Liakas Law's expenses, payroll, overhead, losses, or debts during the relevant time period. *See generally*, Am. Compl. In the absence of such information, no plausible inference can be drawn regarding its overall financial condition, let alone that its certification of economic necessity was false. *See United States v. Associated Foreign Exch. Inc.*, No. 24-CV-10086 (SB) (BFM), 2026 WL 1803728, at *7 (C.D. Cal. May 18, 2026) (allegations

that defendant had "growing revenues" and capital, and was engaged in "acquisition discussions" at the time it received the PPP loans, did not suffice to show lack of economic necessity, where there were no allegations of the company's overall financial condition); *United States v. Woodley*, No. 24-CV-01003 (WHO), 2026 WL 280479, at *6 (N.D. Cal. Feb. 3, 2026) (allegations that electrical contractors were "in high demand and able to secure lucrative contracts" during the pandemic was not sufficient to plead falsity of PPP certifications).

The allegation that "Liakas Firm . . . disregarded the availability of credit through a relative's vast network of case funding and direct law firm funding entities," Compl., ¶ 49, similarly provides no support for the claim of falsity. As Relator himself acknowledges, the CARES Act explicitly "suspend[ed] the ordinary requirement that borrowers must be unable to obtain credit elsewhere." *Id.*, ¶ 15.

Accordingly, Relator fails to state a claim upon which relief can be granted.[4]

**C. Dismissal Pursuant to Public Disclosure Bar**

In addition to being insufficient on the merits, Relator's claim is doubly disposable under the FCA's public disclosure bar, 15 U.S.C. 3730(e)(4). To address the problem of fraudulent billings against the federal government, the FCA's *qui tam* provision "encourage[s] suits by private citizens who learn of fraud against the government," and those private citizens/relators are "entitled to a portion of the

[4] Other than with respect to the ProPublica exhibits appended to Defendants' Motion for Judicial Notice, *see supra* note 1, the Court denies both motions for judicial notice as moot, as it would reach the same conclusions regardless of whether it considered the documents advanced by either party.

proceeds of successful suits." *United States ex rel. Doe v. John Doe Corp.*, 960 F.2d 318, 319 (2d Cir. 1992). Given that this provision offers substantial financial incentives for relators, however, "there is the potential for parasitic lawsuits by those who learn of the fraud through public channels and seek remuneration although they contributed nothing to the exposure of the fraud." *Id.* Accordingly, Congress enacted the public disclosure bar to preclude claims based on allegations or transactions that are "substantially the same" as others that have already been publicly disclosed through one of the sources enumerated in the FCA. *See* 31 U.S.C. § 3730(e)(4)(A).[5]

In 2010, Section 3730(e)(4) was amended by the Patient Protection and Affordable Care Act and now provides, in relevant part:

> (a) The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed –
>
> > (i) in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;
> >
> > (ii) in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or
> >
> > (iii) from the news media, unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

15 U.S.C. 3730(e)(4)(a). Courts in this Circuit have generally held that public

[5] An exception to the public disclosure bar applies where the relator is an "original source" of the information, 31 U.S.C. § 3730(e)(4)(A)-(B), but Relator does not contend to hold such status, *see generally* Opp'n Mem.

disclosures are "substantially the same" as a relator's allegations, and thus that a relator's claims are barred, if the public disclosures contain all of the "essential elements" of the alleged fraud. *Ward*, 2026 WL 2494629, at *8 (collecting cases).

That many of Relator's sources qualify as publicly disclosed "news media" is apparent from the Complaint itself. *See, e.g.*, Compl., ¶¶ 46, 61 (ProPublica screenshots of PPP loans); *id.*, ¶¶ 35-45, 50-53, 57, 66 (screenshots of Liakas Law Instagram with settlement amounts). Relator contends, however, that the state law records it acquired buttress the Complaint—namely with the two principals' home purchases and the instantiation of Jumpstart Funding LLC. Opp'n Mem. at 17-18.

To circumvent the public disclosure bar, however, these allegations must "substantially or considerably add to information that is already public." *Vierczhalek v. MedImmune Inc.*, 803 F. App'x 522, 526 (2d Cir. 2020) (summary order) (cleaned up). Yet they "d[o] not contribute an iota to the 'who,' the 'what,' or the 'how' of [any] scheme." *Id.* Indeed, the Court has already determined that the allegations regarding Jumpstart Funding LLC are not relevant to the allegations of fraud. Accordingly, the public disclosure bar further forbids this suit.

**D. Leave to Amend**

Given that Relator's claims are dismissed on the independent basis that its allegations are substantially similar to publicly disclosed information, leave to amend would be inappropriate. While leave to amend must be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), a court may, in its discretion, decline to grant leave where the proposed amendment would be futile. *Chill v. Gen. Elec. Co.*,

101 F.3d 263, 272 (2d Cir. 1996) ("futility is a 'good reason' to deny leave to amend (quoting *Acito v. IMCERA Grp., Inc.,* 47 F.3d 47, 55 (2d Cir.1995))). Given the Complaint's many fatal deficits and Relator's troubling record of analogous litigation, including against Defendants, *see* ECF No. 40 ("Sanctions Mem.") at 4-7, the Court holds that amendment in this case would be futile.

**E. Sanctions**

Defendants seek sanctions pursuant to Rule 11 and 28 U.S.C. § 1927 against Tradesman and its counsel The Willis Law Group ("Willis Law") for bringing "serial, copy-paste litigation" against law firms and medical providers under the Racketeer Influenced and Corrupt Organizations Act ("RICO") and the FCA. Sanctions Mem. at 1, 4-6 & ns. 2-5 (citing a dozen RICO lawsuits and multiple *qui tam* suits asserting "materially identical fraud schemes," wherein "Relator is a plaintiff in five," "a combination of the Firm, Dean Liakas, and Nicholas Liakas are defendants in three," and another—later voluntarily dismissed—alleges similar PPP loan fraud "against the Individual Defendants' relatives and their personal injury law firm.").[6] In one such action brought by Tradesman and Willis Law against Liakas Law and other defendants, Judge Vitaliano of the Eastern District characterizes Plaintiffs' behavior as a "litigation-spree, filing similar complaints in courts across this district," and inflicting "significant reputational and professional harm," on these

[6] The Court does not address the parties' dispute regarding the iFraud podcast, which has been resolved through their briefing. *See* ECF No. 42, ("Liakas Decl.") ¶ 5; ECF No. 42-1, Liakas Decl., Ex. A, ¶ 8; ECF No. 43 ("Sanctions Opp'n") at 4-5, ECF No. 46 at 1; ECF No. 50 at 1.

defendants, who have not yet had "the benefit of having their day in court." *Roosevelt Road Re, Ltd., et al. v. Liakas Law, P.C.*, 25-cv-00300 (ENV) (RML) (E.D.N.Y.) (Electronic Order, dated May 20, 2026). Defendants seek monetary sanctions, attorneys' fees and costs, and an order "requiring Willis Law to disclose the number of sealed *qui tam* actions against law firms it has filed that are pending in this District or the Eastern District of New York." Sanctions Mem. at 20.

Willis Law counters that the "fact that [it] has identified multiple participants in what it alleges is a coordinated scheme is consistent with, not evidence against, a legitimate enforcement effort." Sanctions Opp'n. at 18. Further, Willis Law contends that Defendants' Rule 11 notice package was improper because it lacked two misconduct allegations advanced by their supporting memorandum (one with respect to the iFraud podcast, *see supra* note 6, and another with respect to a *qui tam* action filed by the brother of a Willis Law attorney, *see* Sanctions Mem. at 7; Sanctions Opp'n at 7). Sanctions Opp'n at 8.

The Rule 11 notice provision does not require that the as-served motion "include supporting papers such as a memorandum of law and exhibits." *Stark Mark Mgmt.,* 682 F.3d at 176. "[U]nder the federal rules, a motion need only: '(A) be in writing unless made during a hearing or trial; (B) state with particularity the grounds for seeking the order; and (C) state the relief sought.' . . . The drafters of the rule surely understood this distinction when crafting the safe harbor requirement." *Id.* at 176-77 (quoting Fed. R. Civ. P. 7(b)(1)). This serves "[t]he purpose of" Rule 11, which is "to give the opponent notice and an opportunity to

consider withdrawing the filing without the court's involvement." *Id.* at 177.

The Court concludes that Defendants "complied with the spirit of Rule 11[,] as [they] gave notice that [they] would be seeking sanctions under Rule 11 and identified" the crux of why they believed the Complaint was frivolous, such that Willis Law could "make an independent, professional judgment as to whether to withdraw the offending pleading." *Id.*; *see* ECF No. 41, Exs. 17-18. While the missing support to Defendants' memorandum added color to their allegations, it by no means formed the core of their motion.

Procedural requirements aside, "the power to sanction 'must be exercised with restraint and discretion.'" *Lask v. Rhee-Karn*, No. 24-CV-02666 (MMG), 2025 WL 2717474, at *8 (S.D.N.Y. Sept. 24, 2025) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991)). District courts have "'significant discretion in determining what sanctions, if any, should be imposed for a violation,' bearing in mind 'that the sanctions should not be more severe than reasonably necessary to deter repetition of the conduct by the offending person or comparable conduct by similarly situated persons.'" *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008) (quoting Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment).

On the merits, the Court cannot conclude on this record that Willis Law failed to conduct a reasonable inquiry prior to filing this suit. While the Court ultimately determined that dismissal with prejudice is appropriate, the Complaint itself was not so wholly without merit or substantively implausible as to suggest sanctionable conduct on the part of Plaintiff's counsel. Moreover, Plaintiff's counsel

advanced reasonable legal arguments in opposition to the motion to dismiss, including with respect to the applicability of the public disclosure bar. The Court therefore denies the motion for sanctions.

**CONCLUSION**

Accordingly, Defendants' Motion to Dismiss is GRANTED with prejudice. All other requested relief is denied. The Clerk of Court is respectfully directed to terminate ECF Nos. 18, 20, 23, 39, and 49 and to close this case.

SO ORDERED.

Dated: September 30, 2026
New York, New York

Jeannette Vargas
JEANNETTE A. VARGAS
United States District Judge